1
2
3
4
5
6

LATHAM & WATKINS LLP
   Wayne S. Flick (SBN 149525)
      *wayne.s.flick@lw.com*
   Faraz R. Mohammadi (SBN 294497)
      *faraz.r.mohammadi@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

7
8
9
10
11
12

BROWN NERI SMITH & KHAN LLP
   Ethan J. Brown (SBN 218814)
      *ethan@bnsklaw.com*
   Jill R. Glennon (SBN 204506)
      *jill@bnsklaw.com*
11601 Wilshire Boulevard, Suite 2080
Los Angeles, CA 90025
Telephone:  (310) 593-9890
Facsimile:  (310) 593-9980

13
14

Attorneys for Plaintiffs PGP Investors,
LLC, PGP Advisors, LLC, and M. Brent Stevens

15
16
17

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

18
19
20
21
22
23
24
25
26
27

| | |
|---|---|
| PGP INVESTORS, LLC, a Delaware limited liability company, PGP ADVISORS, LLC, a Delaware limited liability company, and M. BRENT STEVENS, an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>LIBERTY INSURANCE UNDERWRITERS INC., an Illinois corporation,<br><br>                    Defendant. | CASE NO. 2:17-CV-5296 DSF (RAOx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  March 26, 2018<br>Time:    1:30 p.m.<br><br>*[Declarations of M. Brent Stevens, Wayne S. Flick, and Declaration of Ethan J. Brown; Separate Statement of Uncontroverted Facts; [Proposed] Order; Application to Seal; Unredacted Exhibits A-I; Redacted Exhibits A-I; and Proposed [Order] filed concurrently* |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 26, 2018, at 1:30 p.m., or as soon thereafter as counsel may be heard by the Honorable Dale S. Fischer, in Courtroom 7D of the above-captioned Court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs PGP Investors, LLC, PGP Advisors, LLC and M. Brent Stevens (collectively "Plaintiffs") will and hereby do move this Court for partial summary judgment in their favor on Plaintiffs' first cause of action for breach of contract.

This motion (the "Motion") is brought on the grounds that coverage for Plaintiffs' losses that were incurred in the defense of a civil action filed against them by Joshua K. Phillips is not barred by a contract exclusion included in the insurance policy issued by Defendant Liberty Underwriters Inc. ("Liberty") to PGPA.

This Motion is and will be based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of M. Brent Stevens, Wayne S. Flick, Ethan J. Brown, the Separate Statement of Uncontroverted Facts, the Application to Seal concurrently herewith, the papers and pleadings on file in this matter and such oral argument as may be presented at the hearing on this matter.

This Motion was filed after the conference of counsel on December 20, 2017.

Dated:  February 26, 2018        LATHAM & WATKINS LLP

Wayne S. Flick
Faraz R. Mohammadi

BROWN NERI SMITH & KHAN LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ethan J. Brown
Jill R. Glennon


By :    /s/  Jill R. Glennon
          Jill R. Glennon

Attorneys for Plaintiffs PGP Investors,
LLC, PGP Advisors, LLC, and M. Brent
Stevens

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................... 3

    A.   The Underlying Action ................................................................ 3

    B.   The Liberty Policy ...................................................................... 7

    C.   The Peninsula Parties' Claim For Coverage ............................. 8

    D.   The Peninsula Parties' Covered Losses .................................... 9

III.  ARGUMENT ...................................................................................... 10

    A.   Summary Judgement Standard .................................................. 10

    B.   As A Matter Of Law, Liberty Cannot Meet Its Burden To Prove That The Contract Exclusion Bars Coverage ......................... 10

        1.   The Contract Exclusion Does Not Apply To Phillips's Alternative Causes Of Action For Negligent Misrepresentation, Promissory Estoppel Or Unjust Enrichment ................................................ 12

            a.   Phillips's tort cause of action for negligent misrepresentation is not excluded from coverage .......................................................... 13

            b.   Phillips's quasi-contract causes of action for promissory estoppel and unjust enrichment also are not excluded from coverage ........................... 17

    C.   The "Professional Services Claims" Carve Out To The Contract Exclusion Applies, Preserving Coverage For The Entire Underlying Action ................................................ 20

    D.   The Underlying Action Also Falls Within The Carve Out For Breach Of Operating Documents ........................................ 22

IV.   CONCLUSION .................................................................................. 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Advanced Choices, Inc. v. State Dept. of Health Services*,
    182 Cal. App. 4th 1661 (2010)............................................................17, n.9

*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807 (1990) ..........................................11

*Blackstone Intl' Ltd. v. Maryland Cas. Co.*, 88 A.3d 792 (Md. Ct. App. 2014)....18

*AXIS Ins. Co. v. Inter/Media Time Buying Corp.*,
    Case No. CV 15-01380-DMG (AJWx),
    2015 U.S. Dist. LEXIS 77026 (C.D. Cal. Jun. 8, 2015) ............................16

*Bareno v. Employers Life Ins. Co.,* 7 Cal. 3d 875 (1972) ........................10, n.6, 11

*Braden P'Ship, LP v. Twin City Fire Ins. Co.*, Case No. 14-cv-01689-JST,
    2014 U.S. Dist. LEXIS 180918, (N.D. Cal. Oct. 17, 2014).......................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................................10

*Church Mut. Ins. Co. v. United States Liab. Ins. Co.*,
    347 F. Supp. 2d 880 (2004).................................................................*passim*

*Continental Casualty Co.* v. *Phoenix Constr. Co.*, 46 Cal. 2d 423 (1956) ...........11

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ................................18

*E.M.M.I. Inc. v. Zurich American Ins. Co.*, 32 Cal.4th 465 (2004) ......................11

*Evanston Ins. Co. v. Nagano*, 891 F. Supp. 2d 1179 (D. Haw. 2012) .................19

*Friedman v. Merck & Co.*, 107 Cal. App. 4th 454 (2003) ....................................14

*Garvey* v. *State Farm Fire & Casualty Co.*, 48 Cal.3d 395 (1989) .....................10

*Garcia* v. *Truck Ins. Exchange*, 36 Cal.3d 426 (1984) .................................10, n.6

*Health Net. Inc. v. RLI Ins. Co.*, 206 Cal.App.4th 232 (2012)............................11

*Hernandez v. Lopez*, 180 Cal. App. 4th 932 (2009)...............................................18

*In re Brueckner*, 147 B.R. 685 (Bankr. W.D. Pa. 1992) ......................................12

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000)..............................18, n.10

*Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006)...............................15

*McPeek v. Travelers Cas. & Sur. Co. of Am.*, 2:06-cv-114,
    2006 U.S. Dist. LEXIS 28619 (W.D. Pa. May 10, 2006)..........................15

*North Plainfield Bd. of Educ v. Zurich Am. Ins. Co.*,
    CIVIL ACTION NO. 05-4398 (MLC),
    2008 U.S. Dist. LEXIS 39555 (D.N.J. May 15, 2008) .....................19, n.11

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903 (1986)............20

*Safeco Ins. Co. of Am v. Robert S.*, 26 Cal.4th 758, 765 (2001) ..........................11

*Smith Kandal Real Estate v. Continental Casualty Co.*,
    67 Cal. App. 4th 406 (1998)................................................................11, 12

*Spirtas Co. v. Federal Ins. Co.*, 481 F. Supp. 2d 993
    (E.D. Mo. 2007) ...............................................................................19, n.11

*Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*,
    106 Cal. App. 4th 293 (2003)......................................................................16

*State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193 (1973) .....................11

*Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618 (9th Cir. 1996)......16, 19, n. 11

*TranSched Systems Ltd. v. Federal Ins. Co.*,
    67 F. Supp. 3d 523 (D.R.I. 2014)................................................................15

*Zurich Ins. Co. v. Lifschultz Fast Freight, Inc.*, No. 89 C 5334,
    1991 U.S. Dist. LEXIS 4142 (N.D. Ill. Apr. 4, 1991) ................................17

**STATUTES**

15 U.S.C. §78(c)(a)(10) ........................................................................................21

Fed. R. Civ. P. 56(a) ............................................................................................10

Fed. R. Civ. P. 56(g) ...........................................................................................10

Cal. Civ. Code §1643............................................................................................11

Cal. Corp. §25019................................................................................................21

**OTHERS**

3 NEW APPLEMAN LAW OF LIABILITY INSURANCE §17.07 (2016)..........................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is an action to recover insured losses incurred by Plaintiffs PGP Investors, LLC ("PGPI"), PGP Advisors, LLC ("PGPA") and M. Brent Stevens and (collectively the "Peninsula Parties") from their insurer, Defendant Liberty Insurance Underwriters Inc. ("Liberty"), incurred in the defense and settlement of a lawsuit filed by Joshua Phillips in February 2016.  Phillips alleged that the Peninsula Parties owed him an equal share of management fees and profits from certain private equity investments that he helped to source and fund.  Phillips claimed that Stevens had orally promised to enter into a partnership with him – a claim that the Peninsula Parties vehemently denied – and alleged a series of alternative, non-contract claims, including negligent misrepresentation, promissory estoppel and unjust enrichment.

Liberty denied coverage outright for all aspects of the Phillips claim.  Its denial was predicated on the erroneous assertion that an exclusion for contractual liability in the subject policy (the "Contract Exclusion") precluded coverage for *any* of the causes of action that Phillips alleged – whether based on a contract or not.  Liberty's original denial ignored multiple express exceptions (or "carve-outs") to the Contract Exclusion, several of which preserve coverage for the Phillips claim.  But even after the Peninsula Parties called those carve-outs – *i.e.*, coverage give-backs that Liberty explicitly had written into the Contract Exclusion –  to Liberty's attention, Liberty persisted in denying coverage, applying the carve-out provisions in a manner that was contrary to the facts, to the law, or to both.  Liberty's tortured construction of its *at-best*-ambiguous carve-out provisions – the now-purported meaning of which it could easily have made clear when it wrote the policy –  cannot withstand scrutiny under the applicable rules of insurance policy interpretation.

The Peninsula Parties are entitled to partial summary judgment to the effect that the Contract Exclusion does not excuse Liberty from providing coverage for

1    Phillips's lawsuit because one or more of the express carve-outs to that exclusion

2    apply.  As a matter of settled California law, which applies here, Liberty bears the

3    burden of proof to establish that the Contract Exclusion applies.  Liberty cannot

4    meet that burden because liability under the majority of Phillips's causes of action

5    did *not* depend upon the existence of any contract.

6          Indeed, Phillips alleged principally non-contract causes of action precisely

7    because it was exceedingly unlikely that he could prevail on his frivolous assertion

8    that he and Stevens had orally agreed to enter into a partnership – an assertion for

9    which Phillips admitted there was *no* mutually agreed-upon documentation.

10   Among other reasons that Phillips's oral partnership theory was bound to fail, the

11   one and only agreement that Stevens and Phillips *did* sign – a Consulting

12   Agreement – explicitly disclaimed the existence of any partnership, joint venture

13   or the like.  And furthermore, Phillips signed that Consulting Agreement *months*

14   *after* he claimed that he and Stevens had orally entered into a partnership.

15   Phillips's complaint did not even reference the Consulting Agreement.  Phillips's

16   contractual claims were utterly meritless; the real thrust of his lawsuit was his non-

17   contract-based theories and causes of action.

18         Even if it were not clear that Liberty's reliance on the Contract Exclusion

19   was misplaced – because one or more of the carve-outs plainly apply – the

20   Peninsula Parties would nevertheless be entitled to partial summary judgment

21   because, *at best*, the carve-outs on which Liberty's coverage denial rests are

22   ambiguous.  Because, as a matter of law, any ambiguity in the policy must be

23   resolved in favor of coverage, the Peninsula Parties need only establish that any

24   one of those three carve-outs is ambiguous in order to prevail.  As a matter of law,

25   partial summary judgment is warranted on this alternative basis as well.

26   / / /

27   / / /

28

## II.   STATEMENT OF FACTS

### A.   The Underlying Action

At the time of the matters covered, Plaintiff M. Brent Stevens is the managing member of PGPI, a limited liability company engaged in the business of providing investment management services.[1]  Declaration of Stevens ("Stevens Decl.") ¶ 1.  As alleged by Phillips in his Amended Complaint ("FAC"), in early 2013, Stevens discussed working with Phillips, to develop a private equity investment platform and to raise a private equity fund.  (Plaintiffs' Separate Statement of Undisputed Facts ("SS") 63.)  At the time, Phillips was working at another Los Angeles-based private equity firm.  (SS 62.)

In July 2013, Stevens formed Peninsula Pacific Strategic Partners, LLC ("PPSP") as a limited liability company and wholly-owned subsidiary of PGPA for the purpose, among others, of serving as the entity for which Phillips would work and through which he would carry out his consulting activities on private equity transactions.  (SS 64; Stevens Decl. ¶ 5.)  Phillips alleged that, in June 2013, "Mr. Phillips and Defendant Stevens agreed to work together with the objective of completing private equity transactions."  (SS 63.)  According to Phillips, they further agreed that Stevens, PGPA and PGPI would provide the initial capital to fund the business and that Phillips would contribute his services.  (*Id.*)  As part of the deal, Phillips alleged that "Defendant Stevens and Mr. Phillips would be compensated for their contributions and share in any profits upon the completion of any private equity transactions and/or the sale of the investments following each investment achieving its agreed-upon financial goal or objective.  Phillips declined to pursue other attractive business opportunities in favor of the opportunities with Defendants. . . ."  (*Id.*)  Phillips left his private equity firm and began working at PPSP in approximately July 2013.  (SS 63 and 64.)

---

[1]     Certain of the facts set forth herein are provided for context only, but are not undisputed material facts that are necessary to the Court's adjudication of the Motion.

1    In January 2015, effective as of January 1, 2014, Phillips executed a

2    consulting agreement ("Consulting Agreement") with PPSP, under which Phillips

3    agreed to provide his professional services to raise capital and structure the

4    investments for a private equity fund.  (Stevens Decl., ¶ 6 and Ex. D, p. 43

5    [Consulting Agreement, ¶ 1].)  The Consulting Agreement identified Stevens as the

6    "sole Manager" of PPSP and designated him as Phillips's main point of contact.

7    (*Id*.)  The Consulting Agreement set forth the fee for Phillips's services through

8    December 31, 2014, and stated that "the carried interest percentage and any other

9    equity or equity-like components of compensation of [Phillips] in completed deals

10   shall be subject to mutual agreement."  (*Id*. [Consulting Agreement ¶ 2].)  The

11   Consulting Agreement made explicit that Phillips was an independent contractor

12   and "nothing in this Agreement should be construed to create a partnership, joint

13   venture, or employer-employee relationship."  (*Id*. [Consulting Agreement ¶ 5].)

14   Even though the Consulting Agreement specifically disclaimed the creation

15   of any partnership, Phillips alleged that Stevens and he had orally agreed to

16   become partners approximately five months earlier, in July 2014 (the "Alleged

17   Partnership").  (SS 66.)  Phillips claimed that Stevens began negotiating the terms

18   of their oral partnership in or about May 2014, after Phillips had allegedly

19   achieved initial success on behalf of PPSP by completing the purchase of securities

20   in Wismarq Industries, LLC ("Wismarq") and after allegedly obtaining the

21   exclusive right to acquire Brundage-Bone Concrete Pumping, Inc. ("Brundage-

22   Bone").  (SS 65.)

23   According to Phillips, Stevens orally agreed that PGPA, PGPI and Stevens

24   would continue to provide the capital to fund the private equity business and its

25   investments, Phillips would continue to provide his professional services, and

26   Stevens and Phillips each would be entitled to equal shares of the fee income

27   derived from all private equity transactions and equal shares of the so-called equity

28   promote or "carried interest."  (SS 66.)  In addition to splitting the profits from the

private equity business, Phillips alleged that Stevens agreed to give him a percentage of the "promote interest" in separate casino and gaming investments, ("Souix City") and ("Lago"), which were undertaken by Stevens and the other defendants, and that Phillips would be given the opportunity to co-invest in PGPI at an attractive valuation, a mechanism that would allow Phillips to benefit from PGPI's equity ownership in the acquisitions made by PGPI.  (SS 67.)

Phillips also alleged that Stevens repeatedly promised to memorialize the Alleged Partnership in writing.  (SS 26.)  He claimed that, in reliance on those representations, he continued to work on behalf of PPSP, closing another transaction, Argo Acquisition, LLC ("Argo") in October, 2014.  (SS 29, 69.)

Phillips further alleged that, in March 2015, Stevens began to retreat from the Alleged Partnership.  (SS 70.)  In response, Phillips claimed that he stepped up his requests to memorialize the Alleged Partnership in writing.  (SS 71.)  In June 2015, Stevens informed Phillips that he was terminating their business relationship because of significant information about Phillips's performance that had come to Stevens's attention, and rescinding all outstanding offers for continued service and future compensation.  (SS 72.)  Phillips claimed that the stated reason for his termination was pretextual, and that the real reason was so that Stevens could deny Phillips the interests to which he claimed he was entitled under the Alleged Partnership.  (SS 73.)

Approximately seven months later, on February 18, 2016, Phillips commenced an action in the Los Angeles County Superior Court (the "Underlying Action") against Peninsula Parties.[2]  (SS 38.)  The Underlying Action asserted 12 causes of action, including claims for breach of the Alleged Partnership and alternative, non-contract causes of action for negligent misrepresentation, unfair

---

[2] Although PPSP was named as a party in the Underlying Action, PPSP is not one of the named plaintiffs in this action because the cost of defending and settling the Underlying Action was divided among PGPI, PGPA and Stevens.  (Stevens Decl. ¶ 18.)

business practices, promissory estoppel and unjust enrichment.[3]  In addition to declaratory relief and an accounting, Phillips requested compensatory damages, punitive damages, restitution, attorneys' fees and costs of suit.  (*Id.*)

Phillips alleged that he was damaged by the actions of the Peninsula Parties, because they repudiated the Alleged Partnership, failed to provide Phillips with his contractual share of fees and carried interest, and deprived him of his rights to future profits of the partnership business and its assets.  *(*SS 74-75.)

In addition to the injury arising from the breach of the Alleged Partnership, Phillips claimed that he was damaged by the actions of the Peninsula Parties because he left his previous job at Aurora Resurgence Management Partners, LLC, gave up all cash compensation for two years and turned down other business opportunities in reliance on Stevens's representations.  (SS 77-79; *see also* Flick Decl. ¶ 13 and Ex. 5, p. 198 [Phillips Depo. Trans. 153:21-25].)  The amounts Phillips claims he gave up were substantial.  He had received $2,004,451.88 from his previous employer for 1½ years of work.  (Flick Decl., ¶ 14 and Ex. 6, pp. 202-203 (Phillips Resp. Rog. No. 1).)  When he left Aurora Resurgence, Phillips gave up any further cash compensation.  Phillips also claimed that he turned down a partnership opportunity with one Conner Searcy, and other business opportunities with Trive Capital, Clearlake Capital Group and Marlin Equity Partners, in order to work exclusively on behalf of the Peninsula Parties.  (*Id.*, Phillips Resp. Rog No. 2.)

In the course of defending the Phillips lawsuit, Stevens and PGPI paid out more than $1.5 million in attorneys' fees and related defense expenses.  (Flick Decl. ¶ 12.)  Following Phillips's deposition in December 2016, he and the

---

[3] The FAC included claims for Declaratory Relief, Accounting, Breach of Partnership Agreement, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Implied Partnership, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Tortious Interference with Contract, Promissory Estoppel, Negligent Misrepresentation, Unfair Business Practices, and Unjust Enrichment.  (Flick Decl. ¶ 4 and Ex. 1 [FAC].)

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

1    Peninsula Parties reached a settlement agreement resolving all of their disputes.

2    (*Id.* ¶ 17.)  In accordance with that agreement, on March 13, 2017, Phillips

3    received a confidential payment, and on March 15, 2017, Phillips dismissed the

4    Underlying Action with prejudice.[4]  (*Id.*)

5         **B.**     **The Liberty Policy**

6          The Peninsula Parties contend that the cost of defending and settling the

7    Underlying Action is covered by the "Private Equity Fund and Management

8    Liability Policy," policy number PELAAAXES5003 (the "Policy"), issued by

9    Liberty to PGPA effective November 27, 2015.  (SS 5.)  The Peninsula Parties

10   were all insured under the Policy, as either specifically named Insured

11   Organizations or as subsidiaries or officers of Insured Organizations.  (SS 9-12.)

12   The Policy is written on a claims-made basis and was in force at the time the

13   Underlying Action was filed in February 2016.  (SS 7.)

14         Among other things, the Policy provides coverage to the Peninsula Parties

15   for "Loss," including:

16
17
18
19
20
> sums which the [insureds] are legally obligated to pay solely as a result of any claim insured by this Policy including Defense Costs, compensatory damages, settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award unless such damages are uninsurable as a matter of law.

21   (SS 32.)

22         "Claim" is defined to include a "civil proceeding" against the insured.

23   (SS 31.)  The Policy expressly covers Claims "arising from or for a Wrongful

24   Act," which is defined to mean "any actual or alleged error misstatement,

25   misleading statement, act omission, neglect or breach of duty committed or

26   attempted."  (SS 30, 34.)

27

28

---

[4]      The amount of the confidential settlement is disclosed in the sealed portion of the Peninsula Parties' Complaint at paragraph 29.

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

The Policy also contains a provision excluding coverage for "Loss in connection with any Claim . . . arising from, based upon, or attributable to any liability under any contract or agreement" (*i.e.,* the Contract Exclusion).  (SS 36.) However, the Contract Exclusion by its express terms *excepts* (or "carves out") various types of claims or liabilities, including three that are relevant here:

- The Policy states that the Contract Exclusion "shall ***not*** apply to any (i) liability that would have been incurred in the absence of such contract or agreement. . . . (SS 36; emphasis added.)
- The Policy also states that the Contract Exclusion "shall ***not*** apply to any . . . (ii) Professional Services Claim[.]"  (*Id*.; emphasis added.)[5]
- Finally, the Policy also carves out from the Contract Exclusion all claims arising from liability under "organizational or operational documents of any Insured Organization, including, without limitation, limited partnership agreement, operating agreement, limited liability company agreement, management agreement or subscription agreement."  (*Id*.)

With respect to any Claim that includes "both covered and uncovered matters," the Policy provides that the Loss should be allocated between covered and uncovered Loss.  (SS 37.)

## C.   The Peninsula Parties' Claim For Coverage

In February 2016, the Peninsula Parties tendered a copy of the demand letter sent by Phillips's attorney on February 4, 2016, together with a copy of the Complaint in the Underlying Action.  (SS 39.)  On March 15, 2016, they tendered Phillips' FAC to Liberty.  The Peninsula Parties requested that Liberty provide coverage for the Underlying Action in accordance with the terms of the Policy.

---

[5]   As discussed below, the Policy notably nowhere defines "Professional Services Claim."  It does define "Professional Services," and as noted above, it separately defines "Claim."  Thus, to divine the Policy's meaning of "Professional Services Claim," one must string together these two distinct definitions.  To the extent that this creates any ambiguity, that ambiguity must be resolved in favor of coverage.

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

(SS 42.)  After initially issuing a reservation-of-rights letter (SS 43), Liberty denied coverage solely on the basis of the Contract Exclusion.  (SS 44.)  Liberty claimed that, because the Underlying Action included a cause of action for breach of the Alleged Partnership, *none* of the causes of action in the FAC was covered under the Policy.  (Flick Decl. ¶¶ 7-9, Ex. 3, pp. 113,131-36  [PGPI's RFA No. 125 and Ex. B] and Ex. 4, p. 191 [Liberty's RFA Response No. 125].)

Notably, Liberty's coverage denial letter did not address the application of *any* of the express carve-outs to the Contract Exclusion.  (*Id*.)  Only after the Peninsula Parties called that self-serving oversight to Liberty's attention did Liberty consider whether the carve-outs were applicable to Phillips's lawsuit. (SS 45.)  Based upon its misreading of applicable authority and the record of the Phillips action, Liberty subsequently reiterated its denial of coverage.  (SS 45; Flick Decl. ¶¶ 7-9, Ex. 3, pp. 113, 154-56 [PGPI's RFA No. 127 and Ex. D] and Ex. 4, p. 191 [Liberty's RFA Response No. 127].)

Based upon that wholesale denial – which excused the Peninsula Parties' satisfaction of all policy conditions – the Peninsula Parties undertook to defend and settle the Underlying Action without Liberty's further involvement.  (Flick Decl. ¶10.)

### D.    The Peninsula Parties' Covered Losses

The Peninsula Parties incurred substantial legal expenses in connection with the Underlying Action.  (*Id*. ¶11)  Among other activities, the Peninsula Parties, through their counsel at Latham & Watkins LLP, undertook a thorough investigation of the factual and legal issues raised in Phillips's FAC, engaged in extensive discovery – including reviewing tens of thousands of documents, interviewing employees and affiliated third parties, submitting and responding to written discovery requests, and preparing for and taking Phillips's two-day deposition – and engaged in ongoing settlement discussions with Phillips.  (*Id*.)

In a letter dated April 19, 2017, the Peninsula Parties informed Liberty that

they had settled all matters at issue in the Underlying Action and requested

reimbursement of their defense and settlement costs.  (SS 47.)  Liberty declined to

pay any portion of the Peninsula Parties' loss.  (Flick Decl. ¶ 17.)

## III.   ARGUMENT

### A.   Summary Judgement Standard

Summary judgment is appropriate where the record, read in a light most

favorable to the non-movant, indicates "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct.

2548, 91 L. Ed. 2d 265 (1986).  Partial summary judgment "upon all or any part of

[a] claim," is appropriate where there is no genuine dispute as to any material fact

regarding that portion of the claim.  Fed. R. Civ. P. 56(a).  "If the court does not

grant all the relief requested by this motion, it may still enter an order stating any

material fact – including an item of damages or other relief – that is not genuinely

in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

### B.   As A Matter Of Law, Liberty Cannot Meet Its Burden To Prove That The Contract Exclusion Bars Coverage

Liberty contends that coverage under the Policy is barred by the Contract

Exclusion, which precludes coverage of Loss in connection with any Claim

"arising from, based upon, or attributable to any liability under any contract or

agreement. . . ."  (SS 36; Flick Decl. ¶ 18 and Ex. 7, p. 210 [Liberty's Resp. to

PGPI Rog. No. 4].)  Liberty is wrong for several reasons.

To begin, coverage clauses of insurance policies are interpreted broadly to

protect the objectively reasonable expectations of the insured.  *See, e.g.*, *Garvey*

v. *State Farm Fire & Casualty Co*., 48 Cal.3d 395, 406 (1989).[6]  "The terms of an

---

[6]     This rule of construction stems from the fact that the insurer typically drafts
policy language, leaving the insured little or no meaningful opportunity or ability
to bargain for modifications. *See, e.g.*, *Garcia* v. *Truck Ins. Exchange*, 36 Cal.3d
426, 438 (1984); *Bareno v. Employers Life Ins. Co.*, 7 Cal. 3d 875, 878 (1972).

insurance policy should be interpreted, whenever reasonably practical, 'in a manner that makes them reasonable and capable of being carried into effect, and that is consistent with the parties' intent.'" *Braden P'Ship, LP v. Twin City Fire Ins. Co.*, Case No. 14-cv-01689-JST, 2014 U.S. Dist. LEXIS 180918, *4-5 (N.D. Cal. Oct. 17, 2014), citing *Safeco Ins. Co. of Am v. Robert S.*, 26 Cal.4th 758, 765 (2001); Cal. Civ. Code §1643.

Importantly, ambiguities in insurance policies are resolved in favor of coverage, because the insurer writes the policy. *See, e.g.*, *AIU Ins. Co v. Superior Court*, 51 Cal.3d, 807, 822 (1990) (the insurer is "held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage."); *State Farm Mut. Auto. Ins. Co.* v. *Jacober*, 10 Cal. 3d 193, 197 (1973); *Bareno* v. *Employers Life Ins. Co.* ("*Bareno*"), 7 Cal. 3d 875, 878 (1972); *Continental Casualty Co.* v. *Phoenix Constr. Co.*, 46 Cal. 2d 423, 437 (1956).

Courts interpret *exclusions* to coverage narrowly, while *exceptions to those exclusions* or *carve outs* are broadly construed in favor of the insured.  *Health Net. Inc. v. RLI Ins. Co.* ("*Health Net*") 206 Cal.App.4th 232, 251 (2012). "[A]n exclusion or limitation on coverage must be clearly stated and will be strictly construed against the insurer.  If an exclusion or ambiguity lends itself to two or more reasonable constructions, the ambiguity will be resolved against the insurer and in favor of coverage." *Smith Kandal Real Estate v. Continental Casualty Co.*, 67 Cal. App. 4th 406, 414 (1998).  "[T]he burden rests on the insurer to phrase exceptions and exclusions in clear and unmistakable language." *Health Net.*, 206 Cal.App.4th at 251 (citing *E.M.M.I. Inc. v. Zurich American Ins. Co.*, 32 Cal.4th 465, 470 (2004)).  "[W]hether an exclusion is ambiguous and whether an insured has an objectively reasonable expectation of coverage under the insuring language are questions of law." *Church Mut. Ins. Co. v. United States Liab. Ins. Co.* ("*Church Mut.*"), 347 F. Supp. 2d 880, 883 (2004), *citing Smith Kandal*, 67 Cal.

---

Here, the language in question was proposed by Liberty and accepted without amendment by the Peninsula Parties.  (SS 48-61.)

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

App. 4th at 415.

Applying these rules here, partial summary judgement must be granted in favor of the Peninsula Parties if the plain language of the Policy affords coverage which is not excluded, *or* if the exclusionary language is ambiguous as applied to the facts.

### 1. The Contract Exclusion Does Not Apply To Phillips's Alternative Causes Of Action For Negligent Misrepresentation, Promissory Estoppel Or Unjust Enrichment

In denying coverage, Liberty mistakenly and self-servingly construed the Contract Exclusion, concluding that it applied to *all* the causes of action asserted in the Underlying Action.  Liberty's position ignores the fact that several of Phillips's causes of action were quite clearly *not* dependent on pleading and proof of the existence of a contract that would trigger the application of the exclusion.  Indeed, quite to the contrary, Phillips and his counsel appear to have recognized that he faced a significant challenge proving that he entered into an oral partnership with Stevens – and framed Phillips's lawsuit based on several alternative causes of action precisely to avoid that obstacle.  Designed as they were to avoid the burden of proving the existence of an enforceable contract, those causes of action necessarily fall outside the scope of the Contract Exclusion.

Stevens and Phillips were both sophisticated professionals.  The notion that they would enter into a partnership contemplating multiple transactions, potentially worth tens of millions of dollars, without so much as a signed term sheet or memorandum of understanding would be difficult for any finder of fact to credit, particularly where the written agreement that the parties actually *did* execute – the Consulting Agreement – *expressly disclaimed the existence of a partnership*.  *See, e.g., In re Brueckner*, 147 B.R. 685, 686-87 (Bankr. W.D. Pa. 1992) (rejecting the

1    contention that an experienced and sophisticated businessman would rely on oral

2    representations contradicted by a written loan guarantee).

3        Accordingly, while including in his FAC the theory that a binding oral

4    partnership existed, Phillips pled and pursued various alternative misrepresentation

5    and quasi-contract causes of action, which advanced the essence of Phillips's

6    grievance:  that he expended time and effort to bring to fruition the vision of an

7    investment partnership, which never matured into an actual partnership agreement.

8    The Contract Exclusion does not bar coverage for these alternative causes of

9    action, either because (a) they do not arise from any liability under the Alleged

10   Partnership in the first instance, or (b) they are within the carve-out to the

11   exclusion that preserves coverage for claims based on "liability that would have

12   been incurred in the absence of [a] contract or agreement."  (SS 36.)

13       Importantly, as one leading commentator notes, "'[A] claim for relief cannot

14   be considered to have "arisen out of" a breach of contract where the legal support

15   for the claim emanates from a source other than contract law." 3 NEW APPLEMAN

16   LAW OF LIABILITY INSURANCE §17.07 (2016).  "The fact that the plaintiff alleges a

17   breach of contract claim as one of several alternative theories of recovery should

18   not relieve the insurer of its coverage obligations for a claim covered by its

19   policy."  (*Id.* [citation omitted]; *see also Church Mutual*, 347 F. Supp. 2d at 888

20   [allegations that an insured church fraudulently induced its contractor to reduce its

21   billing statements were not barred by contract exclusion because they were

22   independent of any breach of contract].)

23        a.    **Phillips's tort cause of action for negligent**

24            **misrepresentation is not excluded from coverage**

25       Phillips's negligent misrepresentation cause of action was not predicated on

26   the existence of the Alleged Partnership (or any other alleged contract) – which is

27

28

of course why Phillips pled the theory.[7]   Indeed, Phillips surely recognized that his execution of the Consulting Agreement, *which explicitly disclaimed the existence of a partnership*, made it unlikely that he could ever prevail on his claim that Stevens entered into, and then breached, the Alleged Partnership.  This impediment to success was made even more likely by the fact that Phillips executed the Consulting Agreement, which was made effective as of January 1, 2014, in January 2015 – several months *after* he alleged that Stevens and he had entered into the Alleged Partnership.  (Stevens Decl. ¶ 6 and Ex. D, p. 43.)  Phillips was so concerned about the impact of the Consulting Agreement that he omitted all references to that agreement from the FAC.  (Flick Decl. ¶ 4 and Ex. 1 [FAC].)[8]

Liberty's argument that Phillips's negligent misrepresentation cause of action is nevertheless barred by the Contract Exclusion is meritless for at least two reasons.  First, exclusions are strictly construed against the insurer, and if ambiguous, ***must*** be resolved in favor of the insured's reasonable expectation of coverage.  *Church Mutual*, 347 F. Supp. 2d at 886.  Second, Liberty's interpretation is at odds with the express carve-out that preserves coverage for liability that would have been incurred "in the absence of [a] contract or agreement."  A reasonable insured considering this language surely would conclude that a cause of action that could be proven against it without establishing the existence of a contract – as negligent misrepresentation of course can be – would not be within the sweep of the exclusion.  *Id.* (rejecting an expansive

---

[7]  The elements of a cause of action for negligent misrepresentation are: (1) The defendant must have made a representation as to a past or existing material fact; (2) The representation must have been untrue; (3) Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; (4) The representation must have been made with the intent to induce plaintiff to rely upon it; (5) The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation; (6) And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage. *See Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 461 (2003).

[8]     None of Phillips's claims arose under the Consulting Agreement.

14

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

1  interpretation of an exclusion because it would eviscerate the meaning of coverage

2  provisions).

3    Liberty either did not seek to find, or chose to ignore, numerous decisions

4  holding that a contract exclusion does not apply to such free-standing tort causes of

5  action that are pled as alternatives to a conventional breach-of-contract theory.

6  *See, e.g., Church Mutual*, 347 F. Supp. 2d at 889 (allegations of fraud were

7  independent of the breach of contract claims); *TranSched Systems Ltd. v. Federal*

8  *Ins. Co.*, 67 F. Supp. 3d 523, 529 (D.R.I. 2014) ("the exclusion does not apply

9  where the claims are based upon (pre-contract) fraud rather than contractual

10  liability."); *McPeek v. Travelers Cas. & Sur. Co. of Am.*, 2:06-cv-114, 2006 U.S.

11  Dist. LEXIS 28619, *11 (W.D. Pa. May 10, 2006) (claims did not "arise out of any

12  alleged liability of any insured under any express contract or agreement" because

13  the tortious conduct preceded the contract and induced the plaintiff to enter into the

14  contract).

15    Liberty also ignored the fact that the allegations Phillips made in support of

16  his negligent misrepresentation cause of action were not dependent on the

17  existence of the Alleged Partnership (or any other contract, including the

18  Consulting Agreement), and erroneously asserted that all of the causes of action

19  Phillips alleged pertained to liability that would not exist but for the Alleged

20  Partnership.  (*See* Flick Decl., ¶ 18 and Ex. 7, p. 212 (Liberty Response to PGPI

21  Rog. No. 9).)  Liberty apparently intends to rely on decisions where courts have

22  found that contract exclusions also barred some claims brought in tort.  But those

23  decisions are readily distinguishable because they uniformly involved facts where

24  the existence of the underlying contract was not disputed (which is not the case

25  here) and where the allegations supporting the tort causes of action pertained to

26  conduct that occurred after the undisputed agreements were formed and/or violated

27  duties of care that would not have existed but for those agreements.  *See Medill v.*

28  *Westport Ins. Corp.*, 143 Cal. App. 4th 819, 830 (2006) (torts arising subsequent to

1   the execution of the contract were not independent of the breach of contract claims

2   because no aspect of the underlying litigation would exist without the alleged

3   breaches of the various contractual obligations assumed by the insured); *Southgate*

4   *Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106 Cal.

5   App. 4th 293, 296-97 (2003) (alleged negligence and breach of statutory duties

6   arose from the general contractor's failure to retain funds under a contract to build

7   a golf course and failure to ensure an adequate payment bond for that contract);

8   *AXIS Ins. Co. v. Inter/Media Time Buying Corp.*, Case No. CV 15-01380-DMG

9   (AJWx) 2015 U.S. Dist. LEXIS 77026, *19 (C.D. Cal. Jun. 8, 2015) ("the

10  exclusion applies because Biotab's claim that Inter/Media's representations about

11  doing the work itself and fully disclosing actual media costs were

12  misrepresentations only insofar as the contract allegedly created the expectation

13  that Inter/Media would not use brokers and would fully disclose actual media

14  costs."); *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996)

15  ("Liability for all of these claims depends on the existence of the underlying

16  purchase agreements because without the purchase agreements, Stanford would not

17  have a duty of care towards the claimants.")

18          Here, the Contract Exclusion does not apply to bar coverage for Phillips's

19  negligent misrepresentation tort cause of action because (1) Phillips claimed that

20  Stevens induced Phillips to quit his job at Aurora Resurgence and to work

21  exclusively on behalf of the Peninsula Parties with misrepresentations that Stevens

22  allegedly made a full year *before* the Alleged Partnership was formed, and (2) the

23  alleged injuries Phillips sustained when he gave up a salary for two years (starting

24  in July 2013) and turned down other business opportunities did not arise from any

25  liability under the alleged agreement.  These facts plainly distinguish this case

26  from decisions where coverage for tort causes of action was found to be barred by

27  contract exclusions.

28          At a minimum, the "in the absence of contract or agreement" carve-out is

1  ambiguous.  Where an insurance contract is susceptible to two different
2  interpretations that are both reasonable, it is a basic principle of insurance contract
3  interpretation that "the doubts, uncertainties and ambiguities arising out of policy
4  language ordinarily should be resolved in favor of the insured to protect his
5  *reasonable* expectation of coverage." *Church Mut.*, 347 F. Supp. 2d at 886.

6  **b.**   **Phillips's quasi-contract causes of action for promissory**
7  **estoppel and unjust enrichment also are not excluded from**
8  **coverage**

9  The same analysis set forth above applies to the non-contract causes of
10  action for promissory estoppel and unjust enrichment, and compels the same result.

11  Promissory estoppel is a classic *alternative* to a claim based in contract.[9]  It
12  is commonly asserted where a plaintiff claims the ability to show the existence of a
13  promise, but is unable to establish one or more of the remaining elements of a
14  contract (*e.g.*, offer or acceptance).  The Underlying Action alleged that Stevens
15  promised he would compensate Phillips for his services and that he would
16  memorialize the "promises of compensation" in writing.  (SS 76.)  Phillips further
17  alleged that he relied on Stevens's representations and assurances and "would not
18  have sacrificed receipt of any income for more than two years and not working for
19  any other company during that time," but for those promises.  (SS 77.)

20  Phillips did not need to prove that he actually entered into the Alleged
21  Partnership in order to prevail on this cause of action, which is premised on an
22  *implied-in-law* contract, not an actual "contract or agreement."  *See, e.g., Zurich*
23  *Ins. Co. v. Lifschultz Fast Freight, Inc.*, No. 89 C 5334, 1991 U.S. Dist. LEXIS
24  4142, 11-12 (N.D. Ill. Apr. 4, 1991) ("Zurich alleges facts in support of two
25  theories for recovery under a contract implied in law.  These two theories are unjust

26  _____

27  [9]   The elements of promissory estoppel are: "(1) a promise clear and
unambiguous in its terms; (2) reliance by the party to whom the promise is made;
28  (3) [the] reliance must be both reasonable and foreseeable; and (4) the party
asserting the estoppel must be injured by his reliance."  *Advanced Choices, Inc. v.
State Dept. of Health Services*, 182 Cal. App. 4th 1661 (2010) (citation omitted).

PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGEMENT

1    enrichment and detrimental reliance or promissory estoppel.").  The Contract
2    Exclusion does not apply to an implied-in-law contract, which is not a true
3    "contract."  As one court has noted, promissory estoppel (as well as unjust
4    enrichment) is an *alternative* to contract-based theories of liability that fall beyond
5    the reach of the typical contract exclusion:

> We note that even if the Insurers had not waived the policy's contract
> exclusion, it would appear not to work in their favor.  RMG claimed
> unjust enrichment and promissory estoppel as equitable alternatives to
> breach of contract.  ***Therefore, these claims did not "arise out of"
> Blackstone's alleged breach of contract, or out of any other purported
> "agreement."***

11   *Blackstone Intl' Ltd. v. Maryland Cas. Co.*, 88 A.3d 792, 804 n.15 (Md. Ct. App.
12   2014) (emphasis added), *rev'd in part on other grounds*, 442 Md. 685 (2015).
13        Likewise, Phillips's unjust enrichment cause of action did not depend on the
14   existence of the Alleged Partnership.  In fact, "[a]s a matter of law, an unjust
15   enrichment claim does not lie where the parties have an enforceable contract."
16   *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  The doctrine of
17   unjust enrichment applies where a plaintiff, "*while having no enforceable contract*,
18   nonetheless [has] conferred a benefit on the defendant which the defendant
19   knowingly accepted under circumstances that make it inequitable for the defendant
20   to retain the benefit without paying for its value."  *Hernandez v. Lopez*, 180 Cal.
21   App. 4th 932, 938 (2009) (emphasis added).  Here, Phillips alleged that the
22   Peninsula Parties received the benefit of his services "without delivering agreed
23   upon compensation."[10]  (SS 80-82.)  The unjust enrichment cause of action did not
24   "arise out of" the Peninsula Parties' alleged breach of contract, or out of any other
25   purported "agreement," *see Blackstone*, *supra*, and so was not within the scope of

26
27   ――――――――――――――
10        The elements of unjust enrichment are "receipt of a benefit and unjust
28   retention of the benefit at the expense of another."  *Lectrodryer v. SeoulBank*, 77
     Cal. App. 4th 723, 726 (2000).

18

1     the Contract Exclusion.

2          The Contract Exclusion is inapplicable to the promissory estoppel and unjust

3     enrichment causes of action as they were pled.[11]   Moreover, the literal and properly

4     broad interpretation of the carve-out for liability that would have been incurred "in

5     absence of" a contract includes these quasi-contract causes of action.

6          At a very minimum, it would be ambiguous whether the Contract Exclusion

7     applied not only to express and implied-in-fact contracts, which are actually

8     agreements between the parties, but also to implied-in-law contracts, which are no

9     such thing.   Avoiding such ambiguity would be easily accomplished; indeed,

10    where coverage of implied-in-law contracts is not contemplated, insurers include

11    an *express* exclusion of claims arising from them.   *See, e.g.*, *Evanston Ins. Co. v.*

12    *Nagano*, 891 F. Supp. 2d 1179, 1183 (D. Haw. 2012) (where the insurance policy

13    expressly excluded claims arising from implied-in-law or implied-in-fact

14    contracts).   Liberty did not expressly exclude the quasi-contract causes of action,

15

16    [11]    This case is readily distinguishable from cases where the contract exclusion
       applied to promissory estoppel and unjust enrichment claims that were
17    "dependent" upon or "inextricably linked" to an underlying contract the existence
       of which was not in dispute.  *See, e.g., Stanford Ranch*, *supra*, 89 F.3d at 625
18    ("Liability for all of these claims depends on the existence of the underlying
       purchase agreements because without the purchase agreements, Stanford would not
19    have a duty of care to the claimants."); *Spirtas Co. v. Federal Ins. Co.*, 481 F.
       Supp. 2d 993, 997 (E.D. Mo. 2007) (contract exclusion applied to tort claims
20    because "here all of MIG's [tort] claims against Spirtas arise from the Subcontract
       Agreement, and Spirtas would not have been liable to MIG under any of MIG's
21    asserted theories of recovery in the absence of the Subcontract Agreement."), *aff'd*,
       521 F.3d 833, 836 (8th Cir. 2008) ("[all] five counts MIG alleged in its lawsuit
22    against Spirtas all arose from the contractual relationship between the oral Partnership
       flowed from Spirtas's alleged breach of the subcontract…"); *North Plainfield Bd.*
23    *of Educ v. Zurich Am. Ins. Co.*, CIVIL ACTION NO. 05-4398 (MLC) 2008 U.S.
       Dist. LEXIS 39555 *32, 44-45 (D.N.J. May 15, 2008) ("the contractual
24    relationship between the parties was "endemic" to all causes of action asserted in
       [the underlying] actions, and such causes of action "originated from" or "grew out
25    of" the Board's alleged breach of the contractual relationships. … [T]he alleged
       injuries forming the basis of each of these claims would not have occurred but for
26    the Board's alleged breach of the Project contracts.").   Here, not only was there a
       substantial dispute between the parties about the existence of the oral Partnership
27    Agreement that Phillips alleged (but likely could never prove), but the non-contract
       causes of action that formed the majority of Phillips's FAC all stood on their own,
28    whether there existed a partnership or not.

US-DOCS\97083790.1

                                                              **PLAINTIFFS' MOTION FOR**
                                                              **PARTIAL SUMMARY JUDGEMENT**
                               19

and may not properly be given the benefit of any ambiguity in the Policy.  To the extent that the carve-out is uncertain or ambiguous, the Peninsula Parties are entitled to their reasonable interpretation.  *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 912 (1986).

### C.   The "Professional Services Claims" Carve Out To The Contract Exclusion Applies, Preserving Coverage For The Entire Underlying Action

Separately and in addition to the foregoing, the Underlying Action, even if it were premised in part on the existence of one or more contracts or agreements, constituted a "Professional Services Claim," that is also expressly carved out from the sweep of the Contract Exclusion.  (SS 33.)  In Endorsement No. 6, the Policy defines the term "Professional Services" as follows:

> The investment in (or failure to invest in, or decision not to invest), formation, capitalization or disposition of (including but not limited to the Insured's purchase or sale of, or offer to purchase or sell, any securities issued by a Portfolio Company); or
>
> …
>
> The solicitation of potential investors in, the creation, distribution, sale of securities in, or the management or administration of a private equity fund or Insured Organization.

(SS 33.)

In other words, the Policy provides coverage for the creation of the equity interests right to co-invest in PGPI that Phillips alleged he was entitled to as well as the creation, management and administration of the private equity fund investments that include the Wismarq, Brundage-Bone and Argo acquisitions in which Phillips claimed an equity interest.

Notably, the Policy does not state to or for whom Professional Services must be provided in order to fall within the Professional Services carve-out; thus, "Professional Services" are not limited to acts, omissions or decisions made on

behalf of clients of the Insured Organizations or other third parties.  Again, if Liberty intended that it be so limited, then it could easily have made that intention express.  But Liberty elected not to do so.

The correct resolution in this case is to find the Professional Services Claim carve-out applicable.  As shown below, among other things, Stevens was alleged to have violated the terms of the Alleged Partnership, which, according to Phillips, required that Stevens perform a variety of "Professional Services" – including investing, creating and/or distributing securities, and or management or administration of the Alleged Partnership – for Phillips or for his benefit.  The plain language of the definition, which does not limit the class of persons for whom such services were to be performed, requires application of the Professional Services Claims carve-out.  Liberty chose not to provide a separate definition of the term, "Professional Services Claim," leaving the matter to be resolved by reference to the separately defined terms "Professional Services" and "Claim."  (SS 31, 33.) And again, any ambiguity resulting from Liberty's failure fully to define the terms included in the Policy must be resolved in favor of the Peninsula Parties.

The Underlying Action included matters that satisfied multiple provisions of the Professional Services Claim carve-out:

1.  **"Failure to invest."**  Phillips alleged that Stevens breached his agreement to *invest in the private equity investments on Phillips's behalf* because he did not allow Phillips to co-invest in PGPI at an attractive valuation.  (SS 67.)

2.  **"Creation [or] distribution … of securities."**  The failure to grant Phillips equity interests also breached Stevens's alleged agreement to create or to distribute securities.  Such equity interests are "securities" as that term is commonly understood.  (*See* Cal. Corp. § 25019; 15 U.S.C. § 78(c)(a)(10).)  To the extent that Stevens allegedly failed to create and distribute such interests *(*SS 66 and 67], that failure also constituted a wrongful omission in the "management or administration of the entities" and/or an error in the "disposition" of those interests.

3.  **"Management or administration."**  Finally, the management or administration of PPSP certainly included the allocation of the management fees and the conferring of the benefits of carried interests.  Phillips alleged that Stevens breached his agreement to provide Phillips with his share of management fees and carried interests.  *(Id.)*

All of these allegations by Phillips directly implicate "Professional Services" as that term is defined in the Policy.  The plain terms of the Policy therefore require the finding that the Professional Services Claim carve-out applies, and that the Peninsula Parties are entitled to coverage for the entire Underlying Action.  At a minimum, there is an ambiguity regarding the meaning and application of the Professional Services Claim carve-out, which must be resolved in favor of coverage.

D.  **<u>The Underlying Action Also Falls Within The Carve Out For Breach Of Operating Documents</u>**

Finally, as discussed below, any cause of action in the Underlying Action that relied upon the existence of a "contract or agreement" that gave rise to Phillips's alleged entitlement to equity income from certain private equity transactions fundamentally relied on the "organization and operational documents" of "any Insured Organization" – namely, one or more of the insured limited liability companies through which the income derived from the transactions is distributed.  The Contract Exclusion expressly preserves coverage for these causes of action by creating an exception for claims:

> arising from, based upon, or attributable to any liability under . . . operational and organizational documents of any Insured Organizations, including without limitation, limited partnership agreement, operating agreement, limited liability company agreement, management agreement or subscription agreement.

(SS 36.)  In addition to their other features and functions, the LLC agreements for Insured Organizations PGPI, PGPA, PPSP, Wismarq, Argo and BBCP Investors,

1   LLC ("BBCP") are the foundational documents that define the distribution

2   framework for the income received from the private equity investments referenced

3   in Phillips's FAC.  (*See* SS 70]; Stevens Decl. ¶¶ 2, 3, 5, 7-9 and Exs. A-C, E-G;

4   SS 9, 10, 12, 15, 22 and 25).  The LLC agreements for each of the above entities

5   identify the members and managers of the LLCs and set forth the provisions

6   governing the allocation of profits and losses, distributions and the transfers of

7   interests.  (Stevens Decl. ¶¶ 2, 3, 5, 7-9 and Exs. A-C, E-G).  PPSP is the managing

8   member of Wismarq's manager.  (*Id.* ¶ 7 and Ex. E (Preamble and signature

9   block).)  PPSP is also the managing member of Argo.  (*Id.* ¶ 9 and Ex. G

10   (Preamble and signature block).)  PGPI is the managing member of BBCP.  (*Id.* ¶ 8

11   and Ex. F (Section 2).)

12          As reflected in the fact that Phillips brought suit not only against Stevens,

13   but also against PGPI and PPSP, Phillips's causes of action were premised, at least

14   in the alternative, on his contention that Stevens was authorized to, and effectively

15   did, grant him interests in a number of private equity transactions, but that the

16   entity defendants (the managing members of Argo, Wismarq and BBCP) then

17   breached their contractual obligations to recognize his entitlement to the benefits of

18   those interests.  That theory of liability (laid out in Phillips's Tenth Cause of

19   Action) was one, in the language of the carve-out, "arising from, based upon or

20   attributable to liability under" the terms of the LLC agreements (*i.e.*, the

21   "organizational documents") of the insured defendant entities, including the LLC

22   agreement of PGPI with respect to the payment of any carried interest.

23          Moreover, the "operational and organizational documents" exception to the

24   Contract Exclusion is not limited merely to Claims "*arising from* any

25   organizational or operational documents," *i.e.*, to causes of action brought directly

26   for breach of those documents.  By its express terms, the carve-out is appreciably

27   broader:  it extends to Claims arising from *liability under* such documents.  In

28   other words, the carve-out preserves coverage not just for causes of action alleging

**PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGEMENT**

1  the breach of the organizational documents, but also for those that arise, indirectly,

2  from a liability based upon those documents. The Underlying Action was such a

3  claim: it asserted claims arising from liability "under, based upon or attributable

4  to" liability under the LLC agreements. For example, Phillips alleged that, "[o]n or

5  about June 10, 2015, defendants repudiated and misappropriated Mr. Phillips' [*sic*]

6  interests in and any future management fees and carried interests to which he is

7  entitled from Defendants and Defendants affiliated companies, including, but not

8  limited to, Wismarq, Argo and Brundage-Bone." (SS 70.)

9      Although the Underlying Action did not assert causes of action directly for

10  breach of each LLC agreement, Phillips's causes of action were plainly *based upon*

11  liability under the LLC agreements of the insured defendant entities, including the

12  LLC agreement of PGPI with respect to the payment of any carried interest. It was

13  the alleged liability for the proceeds and fees "under" the organizational and

14  operational documents of the insured entities that formed a primary basis for the

15  Underlying Action. The fact that certain of Phillips's causes of action *also* "arose

16  from" the Alleged Partnership does not defeat the "organizational and operational

17  documents" exception to the Contract Exclusion.

18      Alternatively, at a minimum, there is an ambiguity as to whether the

19  exception set forth in the carve-out to Contract Exclusion for "organizational and

20  operational documents" applies here. The Peninsula Parties have articulated a

21  reasonable interpretation of that carve-out to preserve coverage for claims based

22  upon liability arising under the LLC agreements, which govern the distribution of

23  the very profits and fees to which Phillips claimed he was entitled. Liberty has

24  previously offered a contrary interpretation that would limit the carve-out to claims

25  pertaining to liability arising under the Alleged Partnership, which is the only

26  contract specifically alleged in the FAC. (Flick Decl. ¶ 8 and Ex. 7, p. 2

27  10(Liberty Resp. to PGPI Interrogatory No. 4.) Therefore, even giving Liberty the

28  benefit of the doubt about whether its interpretation is also reasonable, the Policy is

1    subject to two reasonable interpretations – and the uncertainty created by Liberty's

2    failure clearly to define the carve-out must be resolved in the Peninsula Parties'

3    favor.  Partial summary judgment is thus required on this additional and

4    independent ground.

5    **IV.**    <u>**CONCLUSION**</u>

6          For each and all of the foregoing reasons, the Peninsula Parties respectfully

7    request this Court grant the Motion and enter an order finding that Phillips's

8    contractual, tort and quasi-contract causes of action in the Underlying Action were

9    covered by the Policy.

10

11

12    Dated:  February 26, 2018          LATHAM & WATKINS LLP
                                        Wayne S. Flick

13                                    Faraz R. Mohammadi

14                              BROWN NERI SMITH & KHAN LLP

15                              Ethan J. Brown
                                    Jill R. Glennon

16

17

18                              By:_____/s/_____Jill R. Glennon_____

19                                  Jill R. Glennon

20                              Attorneys for Plaintiffs PGP Investors,
                              LLC, PGP Advisors, LLC, and M. Brent

21                              Stevens

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Ethan J. Brown, hereby declare under penalty of perjury as follows:

    I am managing partner at the law firm of Brown Neri Smith & Khan, LLP, with offices at 11601 Wilshire Boulevard, Suite 2080, Los Angeles, California 90025. On the date below, I caused the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 26, 2018.

/s/ Ethan J. Brown